UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 2/22/2016
```

----------------------------------------------------------------- X
                                :

ROBERTO E. JACKSON,               :

                               :

                    Plaintiff,    :          1:15-cv-617-GHW

                               :

            -v -                :        MEMORANDUM OPINION

                               :          AND ORDER

ANGIE RAMIREZ; LEWIS SQUILLACIOTI; :
GARFIELD BOLTON; JUDGE PORTER;     :
MURIEL HARVEY; MS. BURGESS; MARIA  :
DIMEO; CRISANTA ROCKWELL; M.D.     :
YENER BALAN; GAIL WALTHALL;       :
ANDREA EVANS; MONTEFIORE MEDICAL :
CENTER NORTH DIVISION,          :

                               :

                  Defendants. :

----------------------------------------------------------------- X

GREGORY H. WOODS, District Judge:

## I.    INTRODUCTION

      Plaintiff Roberto Jackson, proceeding *pro se*, is a parolee who had his parole revoked after his clinical social worker, with whom he attended bi-monthly therapy sessions at Montefiore Medical Center, reported to his parole officer that he had threatened her.  After being released from custody, Mr. Jackson filed suit alleging that the social worker, his parole officer, a number other employees of the New York State Department of Corrections and Community Supervision ("DOCCS"), and employees of Montefiore Medical Center conspired to falsely accuse him of threatening the social worker.  In a 113-page complaint, Mr. Jackson alleges various federal claims under 42 U.S.C. § 1983, state law claims, and refers to violations of federal and state criminal law, as well as biblical canons and other varied forms of authority.  Because the complaint fails to state a federal claim for the reasons outlined below, defendants' motion to dismiss the federal claims is GRANTED.  Because

the Court declines to exercise supplemental jurisdiction over plaintiff's state law claims, those claims are remanded to state court, where Mr. Jackson initially brought this action.

## II.    BACKGROUND

Mr. Jackson is a parolee who attended bi-monthly therapy sessions with defendant Maria Dimeo, a licensed clinical social worker at defendant Montefiore Medical Center's mental health clinic. Compl. at 18:385–388. During a March 8, 2012 therapy session, Mr. Jackson alleges that he got into an argument with Ms. Dimeo because she was communicating his missed appointments to his parole officer, defendant Angie Ramirez. *Id.* at 19:398–407; 20:422–424. Mr. Jackson complained that such communications violated his privacy rights. *Id.* During the argument, Mr. Jackson alleges that he warned Ms. Dimeo that he would sue her if he went to jail as a result of anything that she said to his parole officer. *Id.* at 20:425–427. At his next parole office visit on May 15, 2012, parole officer Ramirez arrested Mr. Jackson for violating the conditions of his parole— specifically, for threatening Ms. Dimeo. *Id.* at 21:450–454. Rather than merely threatening to sue her, Ms. Dimeo accused Mr. Jackson of physically threatening her by stating: "If I go to jail[,] I have family, if you know what I mean." *Id.* at 22:455–457.

A parole revocation hearing was initially scheduled for May 25, 2012 with defendant Administrative Law Judge Porter presiding, but that hearing was adjourned because ALJ Porter ruled that she did not have enough information before her at the time. *Id.* at 22:473–483. The revocation hearing was subsequently held on June 8, 2012. *Id.* at 23:489–493. Mr. Jackson was represented by counsel on both occasions. *See id.* at 22:473–475; 61:1251–1254. Ms. Dimeo appeared at the hearing, after being subpoenaed and brought to testify as a witness by defendant parole officer Muriel Harvey. *See id.* at 24:494–500; 27:555–563. Ms. Dimeo testified that Mr. Jackson threatened her during the March 8, 2012 therapy session, consistent with what Mr. Jackson had been told at the time of his arrest. *Id.* at 67:1368–1369 ("[H]e said all I have to do is make a

phone call if I go back to jail[,] I have family[,] that was exactly it and that did make me fearful . . . ."); *see also id.* at 40:830–834.  On the basis of this testimony, defendant ALJ Porter found that Mr. Jackson had violated the conditions of his parole by threatening Ms. Dimeo.  *See id.* at 44:914–917; 56:1161.  As a result, Mr. Jackson was confined for a period of about 120 days, and released from custody on September 25, 2012.  *Id.* at 102:2088–103:2090.

Although much of Mr. Jackson's sprawling complaint is unfocused, the crux of his allegations is that Ms. Dimeo testified falsely during the parole revocation hearing—Mr. Jackson alleges that he only threatened to sue Ms. Dimeo, and that he did not additionally threaten her with physical harm.  Mr. Jackson alleges that nearly everyone involved in his arrest and the revocation hearing process conspired to have Ms. Dimeo testify falsely, and thereby have his parole revoked on the basis of her testimony.  He also alleges that Ms. Dimeo violated his privacy rights by disclosing to parole officer Ramirez his attendance at therapy sessions, bipolar diagnosis, and a list of his current medications.  Compl. at 31:658–32:653.  On the basis of these allegations, Mr. Jackson raises a host of legal claims against a number of state defendants from DOCCS and private actors from Montefiore Medical Center.

With respect to the state defendants, Mr. Jackson specifically alleges that:  (1) parole officers Ramirez and Harvey conspired with Ms. Dimeo to have her testify falsely at the revocation hearing, and altered Mr. Jackson's DOCCS records to include Ms. Dimeo's accusations, *id.* at 27:555–559; 43:892–44:923; (2) DOCCS employees presented fraudulent evidence at the revocation hearing, *id.* at 46:960–47:969; (3) Parole Revocation Specialists ("PRS") Garfield Bolton and Maria Burgess, who were responsible for prosecuting the parole revocation, conspired with parole officer Ramirez and others to present false evidence at the hearing, *id.* at 27:46:960–47:969; 70:1440–1443; 81:1657–82:1673; (4) PRS Bolton prosecuted the parole revocation in retaliation for Mr. Jackson exercising his free speech, *id.* at 65:1339–65:1341; (5) ALJ Porter was biased during the revocation hearing,

colluding with PRS Bolton and others to favor the prosecution; *id.* at 52:1073–1080; 60:1233–61:1248; 63:1287–1289; 70:1440–1443; and (6) Regional Director Gayle Walthall[1] and Assistant Commissioner Andrea Evans failed to supervise the other DOCCS defendants, *id.* at 3:76–81; 4:100–5:107.

Mr. Jackson, proceeding *pro se*, filed suit in state court on December 22, 2014.  The action was subsequently removed to federal court by the state defendants on January 28, 2015.  The complaint brings a wide-range of federal claims pursuant to 42 U.S.C. § 1983, including procedural and substantive due process violations, false arrest, false imprisonment, malicious prosecution, and First Amendment retaliation.  The complaint also alleges violations of the Health Insurance Portability and Accountability Act ("HIPPA"), a number of state law claims, and violations of various state and federal criminal laws.

On May 19, 2015, three sets of motions to dismiss the complaint were filed by several defendants:  (1) Crisanta Rockwell; (2) Ms. Dimeo; and (3) PRS Bolton, Ms. Walthall, and parole officers Harvey, Ramirez, and Lewis Squillacioti.  *See* Dkt. Nos. 21, 26, 33.  On June 9, 2015, Defendants Yener Balan and Montefiore Medical Center also filed a motion to dismiss.  *See* Dkt. No. 47.  On June 16, 2015, plaintiff requested an extension of time to amend the complaint in response to the motions to dismiss, which the Court subsequently granted.  *See* Dkt. Nos. 52, 57. Plaintiff did not file an amended complaint, but instead filed a letter on July 8, 2015, which the Court construed as an opposition to the motions to dismiss.  *See* Dkt. Nos. 58, 59.  The final set of defendants—ALJ Porter, PRS Burgess, and Ms. Evans—filed a motion to dismiss on September 3, 2015.  Dkt. No. 65.  After the Court *sua sponte* granted plaintiff an extension of time to respond to

---

[1] Ms. Walthall's name appears as "Gail Walthall" in the complaint, but was corrected to "Gayle Walthall" in her opposition.

the final motion to dismiss, plaintiff submitted an "affadavit [sic] of truth in opposition" to the motion on November 12, 2015.  *See* Dkt. Nos. 71, 72.

### III.   ANALYSIS

#### A.  Motion to Dismiss

Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Rule 8 "does not require detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

When ruling on a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court "must accept all allegations in the complaint as true and draw all inferences in the non-moving party's favor."  *LaFaro v. New York Cardiothoracic Grp., PLLC*, 570 F.3d 471, 475 (2d Cir. 2009).  The Court, however, is not required to credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action."  *Iqbal*, 556 U.S. at 678.  To survive a motion to dismiss under Rule 12(b)(6), the plaintiff must allege facts that, if accepted as true, "state a claim to relief that is plausible on its face."  *Id.*  (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  To meet this plausibility standard, the plaintiff must "plead[ ] factual content that allows the court to draw the reasonable inference that the defendant[s] [are] liable for the misconduct alleged."  *Id.*

Because he is proceeding *pro se*, the Court must liberally construe plaintiff's submissions and "interpret[ ] [them] to raise the strongest arguments that they *suggest*."  *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (emphasis in original); *see also, e.g.*, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("A document filed *pro se* is to be liberally construed . . . .").  "This admonition 'applies with particular force when a plaintiff's civil rights are at issue.'"  *Bell v. Jendell*, 980 F. Supp. 2d 555, 558 (S.D.N.Y. 2013) (quoting *Maisonet v. Metro. Hosp. & Health Hosp. Corp.*, 640 F.Supp.2d 345, 348 (S.D.N.Y. 2009)).

### B.  Claims Brought Under Section 1983

To prevail on a claim brought under 42 U.S.C. § 1983, plaintiff must show that a defendant "acted under color of state law and that she deprived him of a right secured by the Constitution or laws of the United States." *Palmieri v. Lynch*, 392 F.3d 73, 78 (2d Cir. 2004) (citing *Pitchell v. Callan,* 13 F.3d 545, 547 (2d Cir. 1994)).

### 1.  Absolute Immunity

The state defendants first argue that they are each entitled to absolute immunity for any claims relating to their initiating, conducting, or adjudicating parole revocation proceedings.  "A limited number of officials are entitled to absolute immunity from § 1983 damages liability for their official acts."  *Scotto v. Almenas*, 143 F.3d 105, 110 (2d Cir. 1998).  "However, because absolute immunity detracts from section 1983's broadly remedial purpose, the presumption is that qualified rather than absolute immunity is sufficient to protect government officials in the exercise of their duties."  *Id.* (brackets, internal quotation marks and citations omitted).  "Absolute immunity is proper only in those rare circumstances where the official is able to demonstrate that the application of absolute immunity to the circumstances presented is required by public policy."  *Id.* (citing *Cleavinger v. Saxner*, 474 U.S. 193, 201, (1985)).

In resolving whether an official is entitled to absolute immunity, the Court must consider two factors:  "the need for absolute immunity in order to permit the effective performance of the function, and the existence of safeguards against improper performance."  *Dorman v. Higgins*, 821 F.2d 133, 136 (2d Cir. 1987).  Thus, "[c]ourts take a functional approach when determining whether an official receives qualified or absolute immunity; the level of immunity 'flows not from rank or title or location within the Government, but from the nature of the official's responsibilities.'"  *Scotto*, 143 F.3d at 110 (brackets omitted) (quoting *Cleavinger*, 474 U.S. at 201).

It is well established that state officials are absolutely immune for "judicial acts" and "acts that are prosecutorial in nature." *Id.*; *see also Farrell v. Burke*, No. 97-cv-5708 (DAB), 1998 WL 751695, at *4 (S.D.N.Y. Oct. 28, 1998) ("[A]bsolute immunity protects officials in their adjudicative or prosecutorial functions only."). However, a factual inquiry may be necessary to determine whether a state official's acts were judicial or prosecutorial in nature, entitling her to absolute immunity; or administrative or investigative in nature, entitling her to only qualified immunity. *See Stewart v. Lattanzi*, 832 F.2d 12, 13 (2d Cir. 1987) (per curiam); *see also Day v. Morgenthau*, 909 F.2d 75, 77 (2d Cir. 1990) ("When a prosecutor is engaged in administrative or investigative activities, he is entitled only to qualified immunity . . . .").

The Court finds that ALJ Porter is entitled to absolute immunity. Plaintiff alleges that ALJ Porter presided over his parole revocation hearing, and plaintiff's allegations against her relate entirely to judicial acts performed during that hearing. Because ALJ Porter performed a judicial function, absolute immunity applies and the complaint must be dismissed with respect to her. *See Montero v. Travis*, 171 F.3d 757, 760–61 (2d Cir. 1999) (finding that absolute immunity applies to state official who presided over parole revocation hearing); *see also Tulloch v. Coughlin*, 50 F.3d 114, 116 (2d Cir. 1995) (noting that "[c]ourts have extended absolute immunity to administrative law judges").

Moreover, defendants PRS Bolton and Burgess are entitled to absolute immunity based on the prosecutorial functions that they performed. Plaintiff's complaint alleges that PRS Bolton was responsible for prosecuting his revocation hearing, and the entirety of the allegations relate to the functions that PRS Bolton performed at that hearing. Thus, absolute immunity applies. *See Scotto*, 143 F.3d at 112 ("Parole officers also receive absolute immunity for their actions in initiating parole revocation proceedings and in presenting the case for revocation to hearing officers, because such acts are prosecutorial in nature."). Similarly, plaintiff alleges that PRS Burgess was initially responsible for prosecuting the action against him at the May 25, 2012 hearing, although the hearing

was adjourned.  Plaintiff does not raise any allegations against PRS Burgess outside of this context, and thus the claims against her must also be dismissed.

With respect to the remaining DOCCS defendants, the Court finds that absolute immunity is inapplicable for purposes of the motion to dismiss.  Parole officers are generally entitled to absolute immunity based on discretionary decisions to initiate parole revocation proceedings or for presenting the case for revocation.  *See id.* at 111–113.  Under New York law, however, parole officers do not have the discretionary authority to initiate parole revocation proceedings—rather, "if a parole officer believes that a parolee under his supervision has violated a condition of his parole, 'such parole officer *shall* report such fact to a member of the board or a designated officer.'"  *Id.* at 112 (emphasis in original) (quoting 9 N.Y.C.R.R. § 8004.2(a)).  The member or the designated officer receiving the report, in contrast, "*may* issue a warrant . . . provided that the designated officer issuing the warrant shall not also be the officer recommending issuance of the warrant."  9 N.Y.C.R.R. § 8004.2(b) (emphasis added).  On the face of the complaint, it is unclear whether any of the remaining DOCCS officers had discretionary authority to initiate the parole revocation proceedings or otherwise acted in a prosecutorial capacity, and thus the Court cannot find that any are entitled to absolute immunity for the actions alleged at this stage.

### 2.  Eleventh Amendment

The Court construes plaintiff's complaint as being brought against the state defendants in both their individual and official capacities. *See Frank v. Relin,* 1 F.3d 1317, 1326 (2d Cir. 1993) ("[A] plaintiff who has not clearly identified in her complaint the capacity in which the defendant is sued should not have the complaint automatically construed as focusing on one capacity to the exclusion of the other.").  Insofar as plaintiff alleges claims seeking damages against the state defendants acting in their official capacities, however, those claims must be dismissed. *Connecticut ex rel. Blumenthal v. Crotty*, 346 F.3d 84, 101 n.17 (2d Cir. 2003) (upholding dismissal of claims asserting damages against

state officers in their official capacities because "the State of New York is the real party in interest and monetary damages are barred by the Eleventh Amendment to the United States Constitution.").

### 3. *Section 1983 Conspiracy*

Although not specifically pleaded as a cause of action, at the heart of plaintiff's complaint is the allegation that parole officer Ramirez conspired with his social worker, Ms. Dimeo, to violate his federal rights by having Ms. Dimeo testify falsely at the revocation hearing.  To state a claim for conspiracy under 42 U.S.C. § 1983, a plaintiff must allege facts showing:  "(1) an agreement between two or more state actors or between a state actor and a private entity; (2) to act in concert to inflict an unconstitutional injury; and an overt act done in furtherance of that goal causing damages." *Pangburn v. Culbertson,* 200 F.3d 65, 72 (2d Cir. 1999).  Contrary to Ms. Dimeo's assertions that she is not a state actor and therefore may not be liable under § 1983, "an otherwise private person acts 'under color of' state law when engaged in a conspiracy with state officials to deprive another of federal rights." *Tower v. Glover,* 467 U.S. 914, 920 (1984) (citing *Dennis v. Sparks*, 449 U.S. 24 (1980)).

The Second Circuit has recognized that "'conspiracies are by their very nature secretive operations,' and may have to be proven by circumstantial, rather than direct, evidence." *Pangburn,* 200 F.3d at 72 (quoting *Rounseville v. Zahl,* 13 F.3d 625, 632 (2d Cir. 1994)); *see also United States v. Downing,* 297 F.3d 52, 57 (2d Cir.2002) ("[I]t is a rare case where all aspects of a conspiracy can be laid bare in court with the precision of a surgeon's scalpel.") (internal quotation marks and citation omitted).  Notwithstanding—and even before the Supreme Court's decisions in *Iqbal* and *Twombly*— the Second Circuit has consistently held that conclusory allegations are insufficient to state a § 1983 conspiracy claim.  *See, e.g.*, *Ciambriello v. Cty. of Nassau,* 292 F.3d 307, 325 (2d Cir. 2002) ("[C]omplaints containing only conclusory, vague, or general allegations that the defendants have engaged in a conspiracy to deprive the plaintiff of his constitutional rights are properly dismissed;

diffuse and expansive allegations are insufficient, unless amplified by specific instances of misconduct.") (internal quotation marks and citation omitted).

Plaintiff's conclusory allegations are insufficient to plausibly support a claim for § 1983 conspiracy.  Plaintiff's assertion that parole officer Ramirez conspired with Ms. Dimeo rests almost entirely on the allegation that the two were in communication with each other regarding plaintiff's therapy session attendance and the purported threats made to Ms. Dimeo.  But these communications, standing alone, do not plausibly suggest the existence of an unlawful conspiracy.

The conditions of plaintiff's release to parole supervision required plaintiff to "seek, obtain and maintain employment and/or participation in an educational/vocational training or therapeutic program."[2]  Certificate of Release to Parole Supervision, Dkt. No. 35-1.  It was within the scope of parole officer Ramirez's duties to verify that plaintiff complied with his parole conditions and did not commit any other crimes, as well as to ensure that he was properly reintegrating into his community.  *See People v. Huntley*, 371 N.E.2d 794, 797 (N.Y. 1977) (explaining parole officers' dual responsibilities of protecting the "public from the commission of further crimes" and assisting parolee in "a proper reintegration into his community"); *see also* 9 N.Y.C.R.R. § 8004.2(a) (requiring parole officer to report instances where reasonable cause exists to believe that parolee "has lapsed into criminal ways or company, or has violated one or more of the conditions of his release in an important respect").  Thus, the bare allegation that parole officer Ramirez and Ms. Dimeo spoke to one another regarding Mr. Jackson's alleged threats and failure to attend therapy, without more, does permit the inference of an unlawful conspiracy.

---

[2] The Court may take judicial notice of an official state record related to plaintiff's parole revocation hearing as a fact not reasonably subject to dispute because it "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b)(2); *see also Wallace v. New York*, 40 F. Supp. 3d 278, 286 (E.D.N.Y. 2014) (taking judicial notice of when plaintiffs "were convicted of a sex offense, released from prison, placed on probation or parole, and/or classified as a specific risk-level of sex offender; and . . . where they live"); *Hill v. Goord*, 63 F. Supp. 2d 254, 256 (E.D.N.Y. 1999) (taking judicial notice of "[o]rders and documents related to [plaintiff's] related state case and parole hearings").

Similarly, plaintiff asserts that parole officer Harvey conspired with Ms. Dimeo to have her testify falsely, premised entirely on the allegations that Ms. Dimeo appeared only after being subpoenaed and transported to the revocation hearing by parole officer Harvey.  First, the allegation that Ms. Dimeo testified in response to a subpoena cuts against, rather than supports, an inference of a conspiracy between Ms. Dimeo and the parole officers.  Indeed, the complaint includes allegations that Ms. Dimeo testified that she did not want to appear at the hearing, but was forced to do so in response to the subpoena.  Compl. at 24:494–497.  Moreover, the fact that parole officer Harvey ensured Ms. Dimeo's appearance at the revocation hearing by transporting her does not suggest an unlawful agreement to violate plaintiff's rights.  The fact that these two interacted, without more, does not plausibly support an allegation of conspiracy.  *See, e.g.*, *Fisk v. Letterman*, 401 F. Supp. 2d 362, 377 (S.D.N.Y. 2005) ("Alleging merely that a private party regularly interacts with a state actor does not create an inference of agreement to violate a plaintiff's rights."); *Bacquie v. City of New York*, No. 99-cv-10951(JSM), 2000 WL 1051904 (S.D.N.Y. July 31, 2000) ("[N]aked assertions are insufficient to plead a conspiracy to violate a person's constitutional rights.  The pleadings must present specific facts tending to show an agreement and concerted action.") (citation omitted)).

In any event, for the reasons outlined below, the Court finds that plaintiff fails to plausibly allege a deprivation of his constitutional rights, and thus any claim for § 1983 conspiracy must also be dismissed on this basis.  *See Romer v. Morgenthau*, 119 F. Supp. 2d 346, 363 (S.D.N.Y. 2000) ("[I]f a plaintiff cannot sufficiently allege a violation of his rights, it follows that he cannot sustain a claim of conspiracy to violate those rights.").

### 4.  *Procedural Due Process*

Plaintiff next alleges that he was denied due process during the revocation hearing.  In *Morrissey v. Brewer*, 408 U.S. 471 (1972), the Supreme Court held that the revocation of parole implicates a liberty interest protected by the Due Process Clause of the Fourteenth Amendment.  *Id.*

at 480. The Court further held that due process at a final revocation hearing required, at a minimum:

> (a) written notice of the claimed violations of parole; (b) disclosure to the parolee of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a 'neutral and detached' hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and (f) a written statement by the factfinders as to the evidence relied on and reasons for revoking parole.

*Id.* at 489.

Plaintiff first alleges that ALJ Porter was biased in favor of the prosecution at the revocation hearing, and thus he was denied due process on that basis. "Even the most minimal guarantees of procedural due process require that the decision be issued by 'a neutral and detached hearing body such as a traditional parole board' and supported by at least 'some evidence.'" *Victory v. Pataki*, ---F.3d---, 2016 WL 373869, at *10 (2d Cir. Feb. 1, 2016) (quoting *Friedl v. City of New York*, 210 F.3d 79, 85 (2d Cir. 2000)). "Indeed, the essence of a fair hearing is an impartial decisionmaker." *Id.* (internal quotation marks omitted) (quoting *Surprenant v. Rivas*, 424 F.3d 5, 16 (1st Cir. 2005)).

Plaintiff's allegations that ALJ Porter was biased amount to nothing more than plaintiff disagreeing with the line of questioning and tone of the hearing. *See, e.g.*, Compl. at 60:1233–1235 ([ALJ Porter], while laughing . . . allowed [Ms. Dimeo] to greatly influence the power of the Court, as if they were old school buddies."). Such allegations do not plausibly allege that he was denied an impartial decisionmaker. *Compare Victory*, 2016 WL 373869, at *10 (plaintiff deprived right to impartial decision-maker where Parole Board Commissioner acted as "unsworn witness, prosecutor and judge at the rescission hearing"). Moreover, as already discussed above, ALJ Porter is entitled to absolute immunity for the acts that she performed during the hearing.

Plaintiff also alleges that he was denied due process because parole officer Ramirez altered DOCCS records to include Ms. Dimeo's purportedly false accusations. "It is firmly established that

a constitutional right exists not to be deprived of liberty on the basis of false evidence fabricated by a government officer." *Zahrey v. Coffey,* 221 F.3d 342, 355 (2d Cir. 2000).

The complaint fails to plausibly allege that parole officer Ramirez fabricated any evidence that deprived plaintiff of a liberty interest. The alleged alteration of plaintiff's DOCCS records is based entirely on parole officer Ramirez recording Ms. Dimeo's accusations that she was physically threatened—which, the complaint concedes, were consistent with Ms. Dimeo's later testimony at the revocation hearing. Moreover, the complaint notes that plaintiff's parole was revoked on the basis of Ms. Dimeo's testimony at the hearing. Accepting these allegations as true, plaintiff fails to allege that the inclusion of allegedly false information in his DOCCS records deprived him of a liberty interest, or that the revocation hearing otherwise denied him due process. *See Freeman v. Rideout,* 808 F.2d 949, 951 (2d Cir. 1986) ("The prison inmate has no constitutionally guaranteed immunity from being falsely or wrongly accused of conduct which may result in the deprivation of a protected liberty interest. The plaintiff, as all other prison inmates, has the right not to be deprived of a protected liberty interest without due process of law."); *see also Sloane v. Ruiz,* No. 08-cv-9305 (GEL), 2009 WL 1024237, at *2 (S.D.N.Y. Apr. 15, 2009) ("Plaintiff was accorded full procedural protection against the adverse effects of any false statement in his parole violation report. . . . the resulting parole hearing, at which plaintiff was represented by counsel, gave him all the process he was due.").

### 5. *False Arrest, False Imprisonment, and Malicious Prosecution*

The Court liberally construes plaintiff's complaint as asserting claims under 42 U.S.C. § 1983 for false arrest, false imprisonment, and malicious prosecution. Plaintiff's false arrest and false imprisonment claims may be addressed together as they are, for purposes of the allegations in this action, the same. *See Posr v. Doherty*, 944 F.2d 91, 96 (2d Cir. 1991). "False arrest is simply an unlawful detention or confinement brought about by means of an arrest rather than in some other

way and is in all other respects synonymous with false imprisonment." *Evans v. City of New York*, 308 F. Supp. 2d 316, 329 n.8 (S.D.N.Y. 2004) (citation omitted). A claim for false arrest under 42 U.S.C. § 1983 incorporates the elements of a false arrest claim under New York law. *See Boyd v. City of New York*, 336 F.3d 72, 75 (2d Cir. 2003). Under New York law, a plaintiff must show that "(1) the defendant intended to confine [the plaintiff], (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged." *Singer v. Fulton Cnty. Sheriff*, 63 F.3d 110, 118 (2d Cir. 1995) (internal quotation marks and citation omitted). Plaintiff's arrest was privileged if probable cause existed. *See Jocks v. Tavernier*, 316 F.3d 128, 135 (2d Cir. 2003). A valid conviction establishes the existence of probable cause, thereby foreclosing a false arrest claim. *Posr v. Court Officer Shield # 207*, 180 F.3d 409, 414 (2d Cir. 1999) (probable cause is a "complete defense" to a false arrest claim); *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996) (probable cause is a "complete defense" to a false arrest claim and a valid conviction is "conclusive evidence" of probable cause).

A malicious prosecution claim under § 1983 borrows the elements of a malicious prosecution claim under state law. *Hygh v. Jacobs,* 961 F.2d 359, 366 (2d Cir. 1992). New York law requires a plaintiff asserting a malicious prosecution claim to prove "(1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant's actions." *Jocks,* 316 F.3d at 136 (internal quotation marks and citation omitted). Thus, "[m]alicious prosecution suits require, as an element of the offense, 'the termination of the proceeding in favor of the accused.'" *Poventud v. City of New York,* 750 F.3d 121, 130 (2d Cir. 2014) (citation omitted); *see also Heck v. Humphrey,* 512 U.S. 477, 484 (1994) ("One element that must be alleged and proved in a malicious prosecution action is termination of the prior criminal proceeding in favor of the accused.").

Any claim for false arrest, false imprisonment, and malicious prosecution must be dismissed because the complaint fails to plausibly allege a lack of probable cause.  The charge against plaintiff was sustained at the final revocation hearing, and thus there was probable cause to detain him.  *See Cameron v. Fogarty*, 806 F.2d 380, 388 (2d Cir. 1986) ("Where the civil rights plaintiff has been convicted of the offense for which he was arrested, we have in effect accepted the fact of that conviction as conclusive evidence of the good faith and reasonableness of the officer's belief in the lawfulness of the arrest."); *see also Morrissey*, 408 U.S. at 488 ("[A final revocation] hearing must be the basis for *more* than determining probable cause; it must lead to a final evaluation of any contested relevant facts and consideration of whether the facts as determined warrant revocation.") (emphasis added).  Moreover, the malicious prosecution claim must also be dismissed because plaintiff fails to allege that the proceedings were terminated in his favor.

### 6.  *First Amendment Retaliation*

Plaintiff next alleges that the state defendants retaliated against him for exercising his right to free speech.  "To prove a First Amendment retaliation claim under Section 1983, a prisoner must show that '(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action.'"  *Espinal v. Goord*, 558 F.3d 119, 128 (2d Cir. 2009) (quoting *Gill v. Pidlypchak*, 389 F.3d 379, 380 (2d Cir. 2004)).

The complaint fails to allege any protected speech, or retaliation based on speech.  The lone allegation raising retaliation in the complaint concerns PSR Bolton—a statement that plaintiff was prosecuted as part of "[PSR Bolton's] own agenda to retaliate and to punish me, for exercising my free speech."  Compl. at 65:1340–1341.  Plaintiff does not allege the free speech at issue, for which PSR Bolton retaliated against him.  Such a conclusory allegation is insufficient to state a claim for

First Amendment retaliation, and in any event, PSR Bolton is immune from suit based on acts that were prosecutorial in nature for the reasons already discussed.

### 7. Substantive Due Process

Plaintiff alleges that his constitutional right of privacy was violated when Ms. Dimeo disclosed his failure to attend therapy sessions to parole officer Ramirez. Plaintiff also alleges that Ms. Dimeo later disclosed to parole officer Ramirez that he was diagnosed with bipolar disorder, and provided her with a list of his current medications.

The Due Process Clause of the Fourteenth Amendment protects a right of privacy for medical conditions that are "excruciatingly private and intimate in nature," such as HIV status or transsexualism. *See Matson v. Bd. of Educ. of the City Sch. Dist. of N.Y.*, 631 F.3d 57, 63–64 (2d Cir. 2011) (brackets and internal quotation marks omitted); *see also id* at 66 ("[T]he privacy of certain medical conditions has been constitutionalized only with narrow parameters" (brackets, internal quotation marks, and citation omitted)). This constitutional right to privacy extends to parolees, although the right may be limited by the conditions of parole. *Id.* at 64 (noting that a "constitutional right to privacy extends in a limited way to prisoners"); *see also Morrissey*, 408 U.S. at 480 (parolees not entitled to "the absolute liberty to which every citizen is entitled, but only of the conditional liberty properly dependent on observance of special parole restrictions"); *United States v. Polito,* 583 F.2d 48, 54 (2d Cir. 1978) ("Parole is not freedom. A parolee is a convicted criminal who has been sentenced to a term of imprisonment and who has been allowed to serve a portion of that term outside prison walls.").

In *O'Connor v. Pierson*, 426 F.3d 187 (2d Cir. 2005), the Second Circuit held that the plaintiff, a teacher who was placed on involuntary sick leave after he refused to submit to an independent psychiatric examination and refused to release past medical records, had a privacy right protecting him from disclosing his entire medical records. *Id.* at 201. In so doing, the Second Circuit noted

that "[m]edical information in general, and information about a person's psychiatric health and substance-abuse history in particular, is information of the most intimate kind." *Id.* Thus, the Court assumes without holding that, for purposes of this motion, plaintiff has a protected privacy interest in his medical history, including any diagnosis of bipolar disorder.[3]

Whether plaintiff has a constitutional protected privacy interest, however, does not end the inquiry. "To prevail when challenging executive action that infringes a protected right, a plaintiff must show not just that the action was literally arbitrary, but that it was 'arbitrary in the constitutional sense[.]'" *Id.* at 203 (quoting *Collins v. City of Harker Heights,* 503 U.S. 115, 128 (1992). Thus, "[m]ere irrationality is not enough:  'only the most egregious official conduct,' conduct that 'shocks the conscience,' will subject the government to liability for a substantive due process violation based on executive action." *Id.* (quoting *Cty. of Sacramento v. Lewis,* 523 U.S. 833, 846 (1998). "[W]hether executive action shocks the conscience depends on the state of mind of the government actor and the context in which the action was taken." *Id.*

Plaintiff alleges that Ms. Dimeo, who is not a state employee, was responsible for the disclosure of his medical information.  For purposes of § 1983, the actions of a private actor may be attributable to the state when "(1) the entity acts pursuant to the coercive power of the state or is controlled by the state ('the compulsion test'); (2) when the state provides significant encouragement to the entity, the entity is a willful participant in joint activity with the state, or the entity's functions are entwined with state policies ('the joint action test' or 'close nexus test'); or (3) when the entity

---

[3] Defendants argue that plaintiff consented to the release of his medical history, and thus that he does not have any protected privacy interest.  In support, defendants submitted as an exhibit a "Special Conditions of Release to Parole Supervision" form signed by plaintiff, indicating that he "will sign [a] consent to release information at Montefiore Mental Health Center."  Dkt. No. 35-2.  The complaint, however, alleges that plaintiff signed this form under duress, and also alleges that plaintiff did not subsequently sign any consent form agreeing to release his medical information.  *See* Compl. at 85:1735–86:1757.  For purposes of this motion, the Court accepts plaintiff's allegations as true, and therefore the decision does not rest on any purported consent by plaintiff.

has been delegated a public function by the state, ('the public function test'). *Sybalski v. Indep. Grp. Home Living Program, Inc.*, 546 F.3d 255, 257 (2d Cir. 2008) (brackets and internal quotation marks omitted) (quoting *Brentwood Acad. v. Tennessee Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 296 (2001)). Although the Court has concerns whether the complaint alleges facts sufficient to satisfy any of these tests, the Court assumes without holding that, for purposes of this motion, Ms. Dimeo's actions in disclosing plaintiff's medical information were attributable to the state.

Notwithstanding, plaintiff fails to allege facts that plausibly suggest conscience-shocking conduct sufficient to be actionable as a violation of substantive due process. Most critically, plaintiff has not alleged any facts that allow the Court to infer that Ms. Dimeo acted with a culpable mental state in disclosing his medical information. The complaint notes only that plaintiff did not consent to the release of this information. *See* Compl. at 32:664–665. Thus, at most, plaintiff alleges that Ms. Dimeo acted negligently in disclosing this information to his parole officer; but "mere negligence will never give rise to a substantive due process violation." *O'Connor*, 426 F.3d at 203; *see also Rutherford v. Katonah-Lewisboro Sch. Dist.*, 670 F. Supp. 2d 230, 241 (S.D.N.Y. 2009) (granting defendants' motion for judgment on the pleadings where complaint failed to allege malicious motive in disclosure of medical information because "even if [defendant's] decision was careless, or baseless, or even irrational, that is not enough to make out a violation of Plaintiff's constitutional right to privacy"); *Spencer v. Bellevue Hosp.*, No. 11-cv-7149 (CM), 2012 WL 1267886, at *9 (S.D.N.Y. Apr. 12, 2012) (allegation that state employee "loudly announced that she was from Bellevue and then identified [plaintiff] by her name and medication 'for all to hear'" failed to plausibly allege behavior that shocks the conscience).

### 8. *Supervisory Liability*

Plaintiff alleges that Ms. Walthall and Ms. Evans are liable for their failure to supervise and investigate their subordinates, but alleges no facts in support of the allegation. "[L]iability for

supervisory government officials cannot be premised on a theory of *respondeat superior* because § 1983 requires individual, personalized liability on the part of each government defendant." *Raspardo v. Carlone*, 770 F.3d 97, 116 (2d Cir. 2014) (citing *Iqbal*, 556 U.S. 662). In order to meet this requirement, the Second Circuit has explained:

> The personal involvement of a supervisory defendant may be shown by evidence that: (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of plaintiff[] by failing to act on information indicating that unconstitutional acts were occurring.

*Id.* (brackets omitted) (quoting *Colon v. Coughlin,* 58 F.3d 865, 873 (2d Cir. 1995)). In addition, "a plaintiff must also establish that the supervisor's actions were the proximate cause of the plaintiff's constitutional deprivation." *Id.* (citing *Poe v. Leonard*, 282 F.3d 123, 134 (2d Cir. 2002)).

Plaintiff's conclusory allegations fail to allege any personal involvement by Ms. Walthall or Ms. Evans, and thus fail to state a claim for supervisory liability under § 1983. Moreover, for the reasons already discussed, plaintiff has failed to establish any underlying constitutional violation, and therefore any claims for supervisor liability must also be dismissed on that basis. *See Elek v. Inc. Vill. of Monroe*, 815 F. Supp. 2d 801, 808 (S.D.N.Y. 2011) ("[B]ecause Plaintiff has not established any underlying constitutional violation, she cannot state a claim for § 1983 supervisor liability.").

### C.  Health Insurance Portability and Accountability Act of 1996

Although HIPPA generally provides for the confidentiality of medical records, *see* 42 U.S.C. §§ 1320d-1 to d-7, individuals cannot sue to enforce HIPPA or seek damages caused by such disclosures. *See, e.g.*, *Massie v. Metro. Museum of Art*, No. 11-cv-9549 (JPO), 2012 WL 4948191, at *2 n.2 (S.D.N.Y. Oct. 16, 2012) (noting that HIPPA "does not create a private right of action"); *see also Acara v. Banks*, 470 F.3d 569, 571–72 (5th Cir. 2006) ("Every district court that has considered this

issue is in agreement that the statute does not support a private right of action") (collecting cases). Plaintiff's HIPPA claims against defendants for allegedly disclosing confidential medical information must therefore dismissed.

### D.  Private Prosecution

Plaintiff's claims brought under federal criminal statues must also be dismissed because such claims are inapplicable to this civil action.  A private citizen cannot prosecute a criminal action in federal court.  *See Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973) ("[A] private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another.").  Furthermore, because federal prosecutors possess discretionary authority to bring criminal actions, they are "immune from control or interference by citizen or court." *Connecticut Action Now, Inc. v. Roberts Plating Co.*, 457 F.2d 81, 87 (2d Cir. 1972); *Dugar v. Coughlin*, 613 F. Supp. 849, 852 n.1 (S.D.N.Y. 1985) (noting that a plaintiff "cannot use [federal criminal statutes] as a predicate for a section 1983 action").  Accordingly, plaintiff's purported claims brought under federal criminal statutes must be dismissed.

### E.  State Law Claims

Under 28 U.S.C. § 1367(c)(3), supplemental jurisdiction over state law claims is within the Court's discretion if it has "dismissed all claims over which it has original jurisdiction."  The Second Circuit counsels *against* exercising supplemental jurisdiction in such a situation:  "[I]f the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well." *First Capital Asset Mgmt., Inc. v. Satinwood, Inc.,* 385 F.3d 159, 183 (2d Cir. 2004) (quoting *Castellano v. Bd. of Trustees,* 937 F.2d 752, 758 (2d Cir. 1991)).

Having dismissed all of plaintiff's claims that were based on a federal question under 28 U.S.C. § 1331, and there being no other basis for federal jurisdiction over this case, the Court declines to exercise its supplemental jurisdiction over the state law claims. *See* 28 U.S.C. § 1367(c)(3).

"When a district court declines to exercise jurisdiction over state-law claims in a removed case, the Court may either remand or dismiss the state-law claims." *Grand Manor Health Related Facility, Inc. v. Hamilton Equities Inc.*, 941 F. Supp. 2d 406, 423 (S.D.N.Y. 2013) (brackets omitted) (quoting *Maddaloni Jewelers, Inc. v. Rolex Watch U.S.A., Inc.*, 354 F. Supp. 2d 293, 311 (S.D.N.Y. 2004)); *see also Travelers Ins. Co. v. Keeling,* 996 F.2d 1485, 1490 (2d Cir. 1993) (affirming remand of state law claims after district court dismissed federal claims and declined to exercise supplemental jurisdiction). Given that plaintiff originally filed suit in the Bronx County Supreme Court, the Court finds it appropriate to remand plaintiff's state law claims to state court.

## IV.   CONCLUSION

For the reasons outlined above, defendants' motion to dismiss the federal claims is GRANTED. The Court declines to exercise supplemental jurisdiction over the state law claims, and remands those claims to the New York State Supreme Court, Bronx County.

The Clerk of Court is directed to terminate the motions pending at Dkt. Nos. 21, 26, 33, 43, 47, and to close this case.

SO ORDERED.

Dated:  February 22, 2016
New York, New York

_____
GREGORY H. WOODS
United States District Judge